UNITED STATES *v.* E. H. SARGENT & CO., INC. (No. 3519) [1]

United States Court of Customs and Patent Appeals, June 20, 1932

*Charles D. Lawrence,* Assistant Attorney General (*John F. Kavanagh,* special attorney, of counsel), for the United States.

*Curtis E. Loehle* (*James R. Ryan* of counsel) for appellee.

*John G. Lerch, amicus curiae.*

---

[1] T. D. 45774.

[Oral argument April 12, 1932, by Mr. Lawrence, Mr. Ryan, and Mr. Lerch]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, sustaining in part three protests of appellee against the classification and assessment for duty by the collector of certain articles of glass. The merchandise involved was assessed for duty by the collector at 85 per centum ad valorem under paragraph 218 (a) of the tariff act of 1930, as *scientific glass articles*. Appellee protested the classification, claiming all of the articles to be dutiable as *tubes* at 65 per centum ad valorem under paragraph 218 (b) of the same act.

The competing paragraphs read as follows:

PAR. 218. (a) Biological, chemical, metallurgical, pharmaceutical, and surgical articles and utensils of all kinds, including all scientific articles and utensils, whether used for experimental purposes in hospitals, laboratories, schools or universities, colleges, or otherwise, all the foregoing (except articles provided for in paragraph 217 or in subparagraph (e)), finished or unfinished, wholly or in chief value of glass, 85 per centum ad valorem; * * *.

(b) Tubes (except gauge glass tubes), rods, canes, and tubing, with ends finished or unfinished, for whatever purpose used, wholly or in chief value of glass, 65 per centum ad valorem; * * *.

The three protests cover, respectively, articles known as Bunsen tubes, Roehrig tubes, and absorption tubes. The merchandise in question is represented by four exhibits, which were offered and received in evidence in the court below, and which are before us for examination.

Exhibit 1 is described as a Bunsen tube. An examination of the exhibit shows that it is a cylindrical glass container, about 21 inches in length; it is closed at one end, which is rounded, while the other end is open and is slightly flared. Beginning at the closed end is a succession of graduations, said to be milliliters; these graduations are a little more than one-sixteenth inch apart and there are in all 250 of them, covering about 17½ inches of the entire length of the tube; at each fifth mark appears a number, said numbers running from number 1, at the closed end, to number 50 at the other end. The article is of uniform diameter throughout of about nine-sixteenths inch.

Exhibit 2 is representative of part of the merchandise described as Roehrig tubes; it is a tubular container of glass, one end of which is closed in a rounded manner, the other end being open and slightly flared. It is about 18 inches in length and has a uniform diameter of about three-fourths inch, except that, at a point about three-fourths inch from the open end, the diameter is reduced to about five-eighths inch. About 4¼ inches from the closed end a glass faucet or tap pro-

jects, presumably for the purpose of drawing off the contents of the article.

Exhibit 3, representative of the balance of the merchandise described as Roehrig tubes, is identical with Exhibit 2, except that in the open end of Exhibit 3 there is fitted a glass stopper.

Exhibit 4 is representative of the absorption tubes involved herein; it is composed of glass, about 20 inches in length, and is open at both ends. At one end, for approximately 1½ inches of its length, the tube is about three-eighths inch in diameter. At the other end, for about 7 inches of its length, it is similarly constructed, except that, at a point about 3½ inches from the end, this end of the article is bent away from the general direction of the article as a whole. Between these end parts the article consists of a succession of nine spherical or globular formations, these being connected by small necks of glass about three-sixteenth inch in length and of substantially the same diameter as the end portions above referred to. These globes are about 1¼ inches in diameter, and the nine of them occupy about 11½ inches of the entire length of the article.

One of the protests in question also covered merchandise described as Nessler tubes, but said protest was abandoned at the trial in the lower court in so far as it related to said merchandise.

The lower court sustained the protests in so far as they related to the merchandise represented by said Exhibits 1 to 4, inclusive, and entered judgment accordingly. From such judgment this appeal was taken by the Government.

It is conceded by appellee that the articles represented by said Exhibits 1 to 4, inclusive, come within the scope of articles designated as "chemical" or "scientific" articles in said paragraph 218 (a), but it contends that the provision in said paragraph 218 (b) for "tubes" is more specific than the provision for "chemical" or "scientific" articles, under which latter they were classified, and that therefore the articles in question are classifiable thereunder.

If the articles in question are "tubes" within the meaning of said paragraph 218 (b), the contention of appellee is correct and the judgment of the court below should be affirmed.

The word "tube" is defined in Funk & Wagnalls' Standard Dictionary as follows:

A long, hollow cylindrical body, as of wood, metal, rubber, or glass, generally used for the conveyance of something through it, but often as a receptacle for holding something; a pipe.

Webster's New International Dictionary defines the word "tube" as—

1. A hollow cylinder, of any material, to convey liquids or gases or for some other purpose; a pipe; as, a fire tube; a water tube; a condenser tube.

2. Specif.: a. Something with a tube or tubelike part as its chief feature, as a gun or a telescope. * * *

In the case of *United States* v. *Liquid Carbonic Co.*, 160 Fed. 455, there was involved the construction of a provision of the metal schedule of the Tariff Act of 1897, providing for a certain rate of duty upon "steel tubes, finished." It was held by the Circuit Court of Appeals, Second Circuit, that bottle-shaped vessels of steel which were used in the transportation of gas, and were about four feet long and eight inches in diameter, with one end closed and the other tapered to a neck, were "steel tubes, finished," within the meaning of said provision.

In the case of *Ball et al.* v. *United States*, 8 Ct. Cust. Appls. 143, T. D. 32721, this court, after quoting Webster's definition above given, said:

We think it can not be said that whether or not an article is a tube depends upon the use to which it is applied. Webster's definition, which is fairly typical, recognizes "some other purpose" than as a conduit. * * *

In the case of *United States* v. *Chesterton Co. et al.*, 15 Ct. Cust. Appls. 175, T. D. 42232, this court said:

What is or is not "scientific" tubing depends upon the common meaning to be attached to these words, unless altered by proof of commercial designation. We find no such proof of commercial designation in this record.

The words are thus defined in Webster's New International Dictionary (1925):

Scientific, a. 1. Of, pert. to or used in, science; as scientific apparatus.

Tubing, n. 2. A series of tubes; tubes, collectively; a length or piece of a tube; material for tubes; as, leather tubing.

Therefore "scientific tubing," as commonly understood, means a collective assembly of glass tubes, or material for glass tubes, which is of, or pertains to, or is used in, science. * * *

The lower court in its opinion in the case at bar correctly observed as follows:

There is a significant difference between paragraph 218, subsections (a) and (b) of the act of 1930, and paragraph 218 of the act of 1922. The provisions of the act of 1922, so far as pertinent, were for "biological, chemical * * * articles of all kinds, including all scientific articles, utensils, *tubing*, and rods." It did not specifically provide for glass tubes. On the other hand, paragraph 218 (a) of the act of 1930, while providing for "Biological, chemical * * * articles of all kinds, including all scientific articles and utensils," does not include a provision for "tubing and rods." Such are provided for, together with "tubes" in subsection (b) of paragraph 218 of the act of 1930, which provides specifically for "*Tubes* (except gauge glass tubes), rods, canes, and tubing, with ends finished or unfinished, *for whatever purpose* used, wholly or in chief value of glass." It will be seen therefore that Congress deliberately included in paragraph 218 of the present act what it omitted from paragraph 218 of the former act, viz, glass *tubes* "with ends finished or unfinished, *for whatever purpose used*," in a separate section and not under the heading of chemical glassware. This legislation indicated an intention that *all* tubes "with ends finished or unfinished for *whatever purpose used*," even if used for a chemical purpose, should be classified separately and pay a lower rate of duty than chemical glassware. (Italics quoted.)

The question presented, therefore, is whether or not the articles in question are tubes within the common meaning of that word. The lower court answered this question in the affirmative. In so

answering, it apparently gave much weight to the testimony that the articles in question were known to the trade respectively as Bunsen tubes, Roehrig tubes, and Brady tubes. It properly held, however, that commercial designation of the articles as tubes had not been established.

We have examined the testimony in the case and are of the opinion that all of the testimony, other than that describing the articles and the uses to which they were applied, related to the common meaning of the word "tubes," which testimony was properly considered by the lower court, but only as aiding its memory and understanding, and could properly be disregarded by it, and by us upon appeal. *California Fruit Wrapping Mills, Inc.* v. *United States*, 19 C. C. P. A. (Customs) 381, T. D. 45513.

In this connection we would observe that appellant offered certain testimony which was rejected by the court below, and such rejection is assigned as error. Such offer of testimony related only to the common meaning of the words "tubes" and "tubing," and, while the court might properly have admitted it, there was no error in its rejection for the reason that, if admitted, the court was at liberty to disregard it.

It is our view that the word "tubes," as used in said paragraph 218 (b), must be given its common meaning, and if the articles represented by Exhibits 1 to 4, inclusive, are nothing more than tubes, the decision of the court below was correct, regardless of the use for which the articles were designed. In other words, a tube may be a complete article designed for a particular use, and yet come within paragraph 218 (b).

On the other hand, we are of the opinion that, if the articles are more than tubes, they can not be classified under said paragraph 218 (b) but should be classified under paragraph 218 (a).

We have little difficulty with Exhibits 1, 2, and 3. We think the merchandise represented by these exhibits was properly classified by the collector under paragraph 218 (a). It is more than glass tubes. Each of the articles has a function other than that performed by a tube, as that term is ordinarily understood.

Exhibit 4 is somewhat unlike the other articles, in so far as both ends are open and the portions of it that are between the globular formations, and the portions at the ends, would seem to respond to the ordinary definition of a tube. The round globular formations, however, are not tubular in form nor do they perform the ordinary tube function. It is obvious that the globular formations are designed for the purpose of permitting the accumulation of gas therein or for purposes other than for the conveyance of something from one place to another. The device is used in scientific experimentation or scientific work to accomplish certain purposes which are not accomplished by the use of a mere tube, such as is provided for in paragraph 218 (b).

The merchandise represented by Exhibit 4 should be classified with that represented by Exhibits 1, 2, and 3 under paragraph 218 (a).

The protests as to these four exhibits should have been overruled, and the judgment of the United States Customs Court is *reversed*.

### CONCURRING AND DISSENTING OPINION

HATFIELD, Judge: I concur in the conclusion reached by the majority of my associates as to the merchandise represented by Exhibits 2 and 3. However, I am unable to agree that the merchandise represented by Exhibits 1 and 4 is dutiable under paragraph 218 (a).

The articles of which Exhibits 1 and 4 are representative are not "gauge glass tubes." Accordingly, the sole question to be considered here is: Are they tubes, finished or unfinished, wholly or in chief value of glass?

Paragraph 218 (b) provides for—

Tubes (except gauge glass tubes), rods, canes, and tubing, with ends finished or unfinished, for whatever purpose used, wholly or in chief value of glass, 65 per centum ad valorem * * *.

It will be observed that all glass tubes, except "gauge glass tubes," are covered by those provisions, and are dutiable thereunder, regardless of the purpose or purposes for which they are used. The Congress having made one express exception to the operation of those provisions, I am of opinon, considering the context, that no other exception was intended. *Expressio unius est exclusio alterius.* Accordingly, glass articles conforming to the dictionary definitions of the term "tube," except such as are "gauge glass tubes," are covered by those provisions and are dutiable thereunder.

Exhibit 1, a long, hollow, graduated, cylindrical glass container, uniform in diameter, about 21 inches in length, and open at one end and closed at the other, is used for holding, conveying, and, of course, for measuring liquids.

As I understand it, the majority opinion holds that the articles represented by Exhibit 1 are not tubes, because, due to the graduations thereon, they are used for *measuring*, as well as for holding and conveying liquids. Such a holding, in my opinion, too narrowly applies the definition of the term "tubes." The articles represented by Exhibit 1 are not only glass tubes, but they are known and used as such.

In view of the fact that I concur with the views expressed by Judge Lenroot as to the merchandise represented by Exhibit 4, no further discussion is required here.

The judgment of the court below should, in my opinion, be affirmed as to the merchandise represented by Exhibits 1 and 4.

DISSENTING OPINION

LENROOT, Judge, dissenting in part: I am compelled to dissent from the conclusion of the majority as to the proper classification of the merchandise represented by Exhibit 4. This exhibit clearly responds to the dictionary definitions of the word "tube" quoted in the majority opinion; nothing has been added to it as in the case of the other exhibits involved in the case.

The majority opinion states that—

\* \* \* It is obvious that the globular formations are designed for the purpose of permitting the accumulation of gas therein or for purposes other than for the conveyance of something from one place to another. \* \* \*

Apparently the majority has overlooked the fact that the definitions of the word "tube" which it quotes do not limit a tube to an article designed "for the conveyance of something from one place to another." The Funk & Wagnalls' definition, as quoted in the majority opinion with approval, states that a tube is often used "as a receptacle for holding something"; that is what the majority opinion states Exhibit 4 is, a receptacle for the accumulation of gas.

Furthermore, the majority opinion, respecting said Exhibit 4, seems to be based upon the use to which the article is applied, evidently overlooking the provision of paragraph 218 (b) reading, "Tubes \* \* \* for whatever purpose used."

I am clear that Exhibit 4 is a tube within the meaning of said paragraph 218 (b), and the fact that it is used "in scientific experimentation or scientific work" does not exclude it from said paragraph, because the paragraph explicitly covers all tubes "for whatever purpose used."

For the reasons stated, I am of the opinion that the merchandise represented by Exhibit 4 is properly classifiable under said paragraph 218 (b), and therefore the judgment of the court below should be affirmed in so far as the merchandise represented by said Exhibit 4 is concerned.